

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-15-00667-CR

Walter **FISK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR3772
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  November 16, 2016

AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART

A jury convicted appellant, Walter Fisk, on three counts of indecency with a child by contact, and the trial court assessed punishment at three consecutive life sentences.  In three issues on appeal, Fisk asserts the evidence is legally insufficient to support one of the counts against him, the trial court erred by admitting extraneous offense evidence, and the trial court erred by enhancing his punishment based on prior United States Army court-martial convictions.  We affirm the trial court's judgments to the extent they adjudicate guilt on the three counts of

indecency with a child by contact. We reverse the trial court's sentence and remand for a new sentencing hearing.

## SUFFICIENCY OF THE EVIDENCE

Fisk was indicted on four counts, one of which was abandoned by the State. Count I alleged Fisk touched part of H.W.'s genitals, Count II alleged Fisk touched part of S.W.'s genitals, and Count III alleged Fisk touched S.W.'s breasts. Fisk asserts no rational juror could have found he touched part of S.W.'s genitals because the evidence, if believed, showed that he touched only her bladder and S.W. knew the difference between her bladder and her vagina.[1]

When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the jury's determination of the weight and credibility of the evidence, and when the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of its verdict and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper*, 214 S.W.3d at 13. We determine whether the necessary inferences made by the jury are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16-17.

The jury convicted Fisk of touching S.W. by contacting part of her genitals with the intent to arouse or gratify any person's sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West

---

[1] On appeal, Fisk only challenges the legal sufficiency in support of the jury's finding on Count II.

2011).  "Sexual contact" means, "if committed with the intent to arouse or gratify the sexual desire of any person . . . any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child."  *Id.* § 21.11(c)(1).  The definition of "sexual contact" includes the touching of "any part of the genitals" of a person.  *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977).  Thus, the statute includes more than just the vagina in its definition.  *Id.*  (concluding the definition of "genitals" "includes the vulva which immediately surrounds the vagina").

The evidence in support of Count II involved two incidents of touching part of S.W.'s genitals, both on the same day.[2]  S.W. described the first incident as follows:

> A. [S.W.]  And he put his hand – he put it on my bladder but my pants were still on.
> Q. [Prosecutor]: So when you say on your bladder, was it like on your tummy or lower than your tummy?
> A.  It was lower than my stomach.
> Q.  And what did you do when his hand was down there?
> A.  I put it on my stomach.

S.W. described the second incident as follows:

> Q.  Okay. Let's talk about that [the second incident].  What did he do that time?
> A.  It was the same day that I showed him the paper [she brought home from school].
> Q.  Okay.
> A.  I was again in the three-seater.  The – the recliner – it was reclined.  And I was sitting – my legs were where the head was supposed to be.  And he tickled me.  And then he went to my bladder.  He pushed on it.  I said, Ow you're hurting me, you're pushing on my bladder, and he did it harder and faster.
> Q.  So when he's touching you on your bladder, is that the first thing he touched on your body?
> A.  Yes.
> Q.  So what do you mean he's touching you harder and faster.  Can you show the jury what you mean maybe on your arm what he's doing?
> A.  He was doing that at first and I said, Ow you're hurting me.  And he did that even more.
> Q.  Did you tell anyone about that?

---

[2] The incidents alleged in Count II occurred on or about February 10, 2014, and the trial commenced in September 2015.  S.W. was ten years old at the time of trial.  Fisk is her uncle.

A.  Yes.
Q.  Who did you tell?
A.  My mom.
Q.  And I want to go back to the time that you went to the time it was a little below your tummy and it went up.  And I know it might be a little uncomfortable, but do you have another name for that part of your body?
A.  My bladder.
Q.  Your bladder.
A.  Vagina.
Q.  Okay.  So when he's touching you you say your bladder, you're also talking about your vagina, or are those two different things for you?
A.  Those are two different things for me.
Q.  So when he's touching you the first time when you showed him the paper was he touching – did he touch your vagina at all?
A.  No.
Q.  Just touched your bladder?
A.  Yes.

The State also called S.W.'s mother and a sexual-assault nurse examiner ("SANE") to testify.  S.W.'s mother testified that on the afternoon of these two incidents, S.W. told her mother she needed to speak with her.  S.W.'s mother testified, "I said, What's going on.  And she told me. She said, I was laying on the couch and he grabbed my crotch."  The SANE nurse testified S.W. told her,

> [Fisk] was also doing this to me.  [S.W.] rubbed her genital area with her hand. And I [S.W.] didn't really like it.  The last time he put his hand [S.W.] slammed her hand onto her genital area like that.  [S.W.] pushed [her] hand up to [her] tummy off the genital area.  That night he kept on pushing on my bladder and it hurt.  He thought I didn't know what he was doing, but I did.

The State asked the SANE nurse what type of activity S.W. described between herself and Fisk, and the nurse answered,

> She described him placing his hand on her genital area.  And she moved that – his hand up off her genital area to her tummy, to her abdomen.  And at some point later she describes him putting his hand up on her tummy and pushing on her – she described, on her bladder, pushing on her abdomen.

The testimony of S.W.'s mother and the SANE nurse was consistent: both recounted that S.W. said Fisk touched her in her crotch[3] or genital area. Although their testimony was inconsistent with that of S.W.—who said Fisk touched her on her bladder—any inconsistency between what S.W. told her mother and the SANE nurse and S.W.'s testimony at trial went to S.W.'s credibility. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Thus, it was within the jury's province to determine the credibility of S.W., her mother, and the SANE nurse; and to resolve inconsistencies between the witnesses' testimony.

Based upon the evidence recounted above, the jury could have reasonably believed Fisk engaged in sexual contact with S.W. even though some of S.W.'s trial testimony was inconsistent with her earlier out-of-court statements. Therefore, we conclude the evidence was legally sufficient to support the jury's finding that Fisk touched S.W. by contacting part of her genitals with the intent to arouse or gratify any person's sexual desire.

---

[3] *See Hernandez v. State*, 13-11-00019-CR, 2012 WL 5590969, at *3 (Tex. App.—Corpus Christi Nov. 15, 2012, no pet.) (mem. op., not designated for publication) ("In appellant's statement, he admits that he had his pants unzipped and was on top of the minor and 'rubbed her crotch area once over her shorts . . . .' These statements show that appellant engaged in 'sexual contact with the child or cause[d] the child to engage in sexual contact.'"); *Kirsch v. State*, 02-06-031-CR, 2007 WL 704905, at *6 (Tex. App.—Fort Worth Mar. 8, 2007, pet. ref'd) (mem. op., not designated for publication) ("But here, A.L. testified that Kirsch put his 'pee pee' in her mouth; that he came into the room where she was sleeping, wearing only a shirt such that she could see his 'pee pee'; that he touched her crotch with his hand and that he moved his hand around; and that he put green Jello on her crotch. . . . Although the acts may have been committed in close temporal proximity, Kirsch's insertion of his penis into A.L.'s mouth was a separate and distinct act from his hand touching her sexual organ. [citation omitted] Consequently, the record supports the submission of jury charges for both aggravated sexual assault and indecency with a child."); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) 543 (defining "crotch" as "something in the form of an angle usu. less than a right angle formed by the parting (as from a trunk or body) of two legs . . . .").

**EXTRANEOUS OFFENSE EVIDENCE**

During the guilt/innocence phase of the trial, the trial court allowed testimony from two other girls who Fisk allegedly sexually abused. The first witness, S.A., testified that while she lived in Las Lunas, New Mexico with her parents, Fisk (her great-uncle) also lived in Las Lunas with her great-grandfather. S.A. said that Fisk touched her inappropriately when she visited her great-grandfather's house. She said Fisk touched her "in [her] vagina as well as [her] butt," and the touching occurred from the time she attended kindergarten to the second grade.[4] S.A. said the touching was under her clothing and included penetration. The second witness, D.B., testified that while she lived in Las Lunas, New Mexico with her parents, Fisk (her uncle) rubbed or inserted his finger into her vagina or made her touch his genitals, and the touching occurred when she was in the third and fourth grades.[5] In his second issue, Fisk asserts the trial court erred by admitting this extraneous offense evidence. We will uphold the trial court's evidentiary ruling if it was correct under any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

As a general rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, in the context of a sexual offense against a child, a different rule applies to recognize that "[t]he special circumstances surrounding the sexual [offense against] a child victim outweigh normal concerns associated with evidence of extraneous acts." *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016,

---

[4] S.A. was fifteen years old at the time of trial, and she is S.W.'s half-sister.

[5] D.B. was seventeen years old at the time of trial.

pet. ref'd) (quoting *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd)).

The Texas Code of Criminal Procedure allows such evidence under the following circumstance:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2016).[6]

However, evidence that is relevant under article 38.37 is subject to exclusion under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see also Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (applying Rule 403 to article 38.37 evidence). On appeal, Fisk points to Rule 403, and argues the extraneous offense evidence should have been excluded because it was "highly prejudicial."[7]

---

[6] Subsection (a)(1) referenced in article 38.37, section 2(b) includes prosecution under section 21.11 of the Texas Penal Code for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(a)(1)(C).

[7] On appeal, the State contends Fisk waived this complaint because he did not object when the two witnesses testified. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (holding, "it is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered."). We disagree with the State's waiver argument. During the trial, after the SANE nurse testified, the State indicated its next witnesses would be two article 38.37 witnesses. While the jury was at lunch, the trial court first heard the testimony from the two witnesses, and then asked for arguments from counsel. Fisk's attorney raised several objections, including that the evidence was "highly prejudicial." After the trial court ruled the testimony admissible, the jury was called in and the two witnesses testified. This is not a case where the substance of the testimony of two witnesses is later admitted via the defendant himself, a third witness, or some other form of evidence. Here, Fisk raised his objection at trial to the testimony of the two article 38.37 witnesses. The trial court conducted an article 38.37 hearing and ruled the testimony admissible. *See* TEX. R. APP. P. 33.1(a) (to preserve error in admitting evidence, a party must make a proper objection and obtain a ruling on that objection). After the trial court's ruling, the two witnesses testified. We do not believe Fisk was required to raise the same objection the trial court had minutes earlier overruled. Therefore, Fisk's Rule 403 objection is preserved for our review on appeal. *See Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd) ("Because Bradshaw objected to evidence regarding each of these offenses as 'highly prejudicial' and 'wholly for purposes of poisoning the minds of the jury with extraneous allegations,' Bradshaw preserved his objection under the prejudice prong of Rule 403 regarding this evidence.").

Rule 403 favors the admission of relevant evidence. *Aragon v. State*, 229 S.W.3d 716, 724 (Tex. App.—San Antonio 2007, no pet.). Moreover, the Rule presumes relevant evidence is more probative than prejudicial. *Id.* In determining whether it was proper to admit the evidence under Rule 403, we balance the claimed probative force of the proffered evidence along with the State's asserted need for that evidence against (1) any tendency of the evidence to suggest the case would be decided on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

## A. Probative Value

The first key phrase of Rule 403—"probative value"—"means more than simply relevance." *Gigliobianco*, 210 S.W.3d at 641. It is the measure of "how strongly [the evidence] serves to make more or less probable the existence of a fact of consequence to the litigation— coupled with the proponent's need for that item of evidence." *Id.* When the State has other compelling evidence to establish the fact or proposition that the challenged evidence goes to prove, the probative value of the contested evidence will weigh far less in the probative versus prejudicial balance. *Id.*

On appeal, Fisk asserts the extraneous offense evidence was not probative of the three distinct counts under which he was tried. According to Fisk, the three counts under which he was tried related to events that occurred in a single location in Bexar County, Texas, during a two-day period in 2014. On the other hand, the events about which S.A. and D.B. testified occurred years earlier in Las Lunas, New Mexico.

Fisk does not elaborate on why he believes the time gap detracts from the probative value of the extraneous offenses, but we note that "remoteness is not the only factor to consider when analyzing the probative value of evidence of an extraneous offense." *Robisheaux v. State*, 483 S.W.3d 205, 219 (Tex. App.—Austin 2016, pet. ref'd). Remoteness in time is "an element of the factorial analysis that courts should conduct in deciding whether to exclude evidence under Rule 403." *Gaytan v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd). Therefore, we analyze the claimed probative force of the proffered evidence along with the State's asserted need for that evidence.

The State had to prove Fisk engaged in sexual contact by touching part of the genitals of H.W.[8] (Count I) and S.W. (Count II), and engaged in sexual contact by touching S.W.'s breast (Count III). Although the remoteness in time of the extraneous offenses may undermine the probative value (an argument Fisk does not expressly make on appeal), we conclude the trial court could have reasonably determined the similarities between the extraneous offenses and the charged offenses strengthened the probative force of the evidence. Fisk allegedly committed sexual offenses against young female family members while visiting homes in which these young females were in familiar surroundings. Therefore, the evidence of alleged prior sexual abuse of young females was especially probative of Fisk's propensity to engage in sexual contact with young females.

As for the State's need for the evidence, with article 38.37, section 2, "the Legislature specifically acknowledged the fact that, 'because of the nature of child sex offenses, there is typically very little evidence to assist prosecutors with proving their cases.'" *Bradshaw*, 466 S.W.3d at 884 (citation omitted). "Victims, especially children, are many times so scarred by the

---

[8] H.W. was five years old at the time of trial. H.W. testified that, while at a neighbor's house, Fisk once touched her "bottom" and a part of her body "people aren't supposed to touch" with his hand on top of her clothing.

physical and emotional trauma of the event that there are often long delays in the reporting of the crime, and these delays can lead to the destruction or deterioration of what little physical evidence exists. As a result, the primary piece of evidence in most child sexual abuse cases is a traumatized child." *Id.* "In the absence of the extraneous-offense evidence, this becomes a 'he said, she said' case." *Id.* Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or the complainant in such 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

Here, during defense counsel's closing arguments, counsel challenged S.W.'s credibility and argued she was dishonest, and he argued H.W.'s mother influenced H.W.'s testimony. We conclude the trial court could have reasonably determined the State needed the extraneous evidence in this "he-said-she-said" case.

## B.    Remaining Factors

The second phrase of Rule 403—"unfair prejudice"—refers to a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641. The third phrase—"confusion of the issues"— refers to "a tendency to confuse or distract the jury from the main issues in the case." *Id.* The fourth phrase—"misleading the jury"—refers to "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Id.* The final two phrases—"undue delay" and "needless presentation of cumulative evidence"—are "self-explanatory and concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.*

On appeal, Fisk asserts the extraneous offense evidence had a "severe potential" to "infect" the jury in an irrational and indelible way, and the evidence tempted the jury to convict him on

grounds apart from the evidence in support of the indictment. We recognize that this type of extraneous-offense evidence has "a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children." *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd); *see also Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (acknowledging that "sexually related bad acts and misconduct involving children are inherently inflammatory). The extraneous offense evidence in this case was more egregious than the evidence supporting the charged offenses because the prior acts involved touching under the clothing, penetration, and the touching of Fisk's genitals. Therefore, we conclude this factor weighs in favor of exclusion of the evidence.

Fisk does not contend the extraneous offense evidence had a tendency to confuse the issues or mislead the jury, and we do not believe the evidence had any such effect. The last factor concerns whether presentation of the extraneous offense evidence consumed an inordinate amount of time. Fisk contends that although S.A.'s and D.B.'s testimony consumed only twenty-four pages of the reporter's record, these twenty-four pages amounted to a "substantial" eighteen percent of the total testimony. Although the development of the evidence of the extraneous acts took some time and more than one witness, we conclude the trial court could have reasonably determined it was not so overwhelming as to distract the jury from the charged conduct.

## C. Conclusion

"[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak*, 420 S.W.3d at 811. "[A]ll evidence against a defendant is, by its very nature, designed to be prejudicial." *Id.* The fact that proffered evidence is prejudicial is insufficient to exclude it under Rule 403 because only "unfair" prejudice provides the basis for exclusion of relevant evidence under the rule. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990) (op. on reh'g); *see also Mechler*, 153 S.W.3d at 440

(holding, Rule 403 does not exclude all prejudicial evidence; the Rule "focuses only on the danger of 'unfair prejudice'"). Although we acknowledge the extraneous offense evidence was of a more serious nature than the charged offenses, after balancing all the Rule 403 factors, we conclude the trial court did not err in admitting the extraneous offense evidence.

## USE OF PREVIOUS MILITARY CONVICTIONS

During the sentencing phase of the trial, the trial court admitted evidence of Fisk's prior military court-martial convictions and used the convictions to enhance his punishment. The trial court admitted into evidence, without objection, a copy of a "General Court-Martial Order," dated June 25, 1990, which listed four "specifications" of indecent acts upon three different girls under the age of sixteen years, and one "specification" of sodomy of a girl under the age of sixteen years. The trial court determined the court-martialed offenses were substantially similar to the elements of the offense of indecency with a child under Texas Penal Code section 21.11, and used the prior convictions to enhance Fisk's punishment as a repeat sex offender. In his final issue, Fisk asserts the trial court erred because the court-martialed convictions were not substantially similar to Texas's indecency with a child statute.

### A.     Applicable Law

The Texas Penal Code provides for enhanced punishments for those who are convicted of first-, second-, or third-degree felony offenses and who have prior non-state-jail felony convictions. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2016). When, as here, a defendant is convicted of indecency with a child by contact under Penal Code section 21.11(a)(1) and he has a prior conviction for one of the sexual offenses listed in Penal Code section 12.42(c)(2)(B), the punishment is an automatic life sentence. *Id.* § 12.42(c)(2). Section 12.42 creates a "two-strikes policy" for repeat sex offenders in Texas, "embodying the legislature's intent to treat repeat sex offenders more harshly than other repeat offenders." *Anderson v. State*, 394 S.W.3d 531, 535

(Tex. Crim. App. 2013) (citation omitted). "The legislature also mandated the automatic 'two strikes' enhancement to life imprisonment if the defendant has previously been convicted of an offense . . . under the laws of another state containing elements that are substantially similar to the elements of an [enumerated Texas] offense." *Id.* (citation omitted); *see* TEX. PENAL CODE § 12.42(c)(2)(B)(v).[9]

Courts engage in a two-prong analysis when determining if an out-of-state sexual offense contains "substantially similar" elements to a listed Texas sexual offense. No single factor in the analysis is dispositive, and a court must weigh all factors before determining whether an out-of-state sexual offense contains "substantially similar" elements to a listed Texas sexual offense. *Anderson*, 394 S.W.3d at 535-37. Under the first prong, the elements being compared must display a high degree of likeness, but may be less than identical and need not parallel one another precisely. *Id.* at 536; *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011). "It is not essential that a person who is guilty of an out-of-state sexual offense would necessarily be guilty of a Texas sexual offense as there is no requirement of a total overlap, but the out-of-state offense cannot be markedly broader than or distinct from the Texas prohibited conduct." *Anderson*, 394 S.W.3d at 535-36. The focus of the inquiry is on the elements of the offense, not the specific conduct that was alleged. *Id.* at 536.

Under the second prong of the analysis, the "elements must be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *Prudholm*, 333 S.W.3d at 595. "This is itself a two-step analysis." *Anderson*, 394 S.W.3d at 536. "Courts must first determine if there is a 'similar danger to society'

---

[9] The Court of Criminal Appeals has held that "prior UCMJ convictions constitute 'conviction[s] under the laws of another state' for purposes of Section 12.42(c)(2)(B)(v)." *Rushing v. State*, 353 S.W.3d 863, 868 (Tex. Crim. App. 2011).

that the statute is trying to prevent." *Id.* "The court must then determine if the class, degree, and punishment range of the two offenses are substantially similar." *Id.*

During the sentencing hearing, the trial court admitted into evidence, without objection, the 1984 Manual of Courts-Martial, United States, and the testimony of Major Jacquelyn Christilles who testified as an expert in military law. Major Christilles testified the Uniform Code of Military Justice (the "UCMJ") contains various punitive articles and Article 134 is a "catch-all article" that encompasses many different charges. "General Article" 134 provides as follows:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

10 U.S.C.A. § 934 (West 2012).

Major Christilles explained the 1984 Manual lists the different Article 134 charges and their elements, sample "specifications," and charge language. Major Christilles testified she compared the sample specifications contained in Article 134, paragraph 87, with the actual court-martial charges against Fisk, and she concluded Fisk had been charged with indecent acts with a child under military law. Paragraph 87 of Article 134, entitled "Indecent acts or liberties with a child," identifies two offenses, one that requires physical contact and the other that does not. The first, requiring physical contact, lists the following elements:

> (a) That the accused committed a certain act upon or with the body of a certain person;
> (b) That the person was under 16 years of age and not the spouse of the accused;
> (c) That the act of the accused was indecent;
> (d) That the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and
> (e) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, Appdx. 27, *Articles Applicable to Sexual Offenses Committed Prior to 10 October* 2007, Art. 134, ¶ 87(b)(1).[10]  "Indecent" is defined as "signif[ying] that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." *Id.* art. 134, ¶ 90(c).

The second offense, not requiring physical contact, lists the following elements:

(a) The accused committed a certain act;
(b) That the act amounted to the taking of indecent liberties with a certain person;
(c) That the accused committed the act in the presence of this person;
(d) That this person was under 16 years of age and not the spouse of the accused;
(e) That the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and
(f) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Id.* art. 134, ¶ 87(b)(2).  Paragraph 87 explains "indecent liberties" as follows:

When a person is charged with taking indecent liberties, the liberties must be taken in the physical presence of the child, but physical contact is not required. Thus, one who with the requisite intent exposes one's private parts to a child under 16 years of age may be found guilty of this offense.  An indecent liberty may consist of communication of indecent language as long as the communication is made in the physical presence of the child.

*Id.* art. 134, ¶ 87(c)(2).  The maximum punishment under Paragraph 87 for both offenses is "[d]ishonorable discharge, forfeiture of all pay and allowances, and confinement for 7 years." *Id.* art. 134, ¶ 87(e).

The relevant provisions of section 21.11 of the Texas Penal Code provide as follows:

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

---

[10] Paragraphs 87 and 90 of Article 134 were deleted in 2007 by Executive Order 13447.  72 Fed. Reg. 56,179 (Oct. 2, 2007).

(2) with intent to arouse or gratify the sexual desire of any person:
  (A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or
  (B) causes the child to expose the child's anus or any part of the child's genitals.

. . .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

  (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
  (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

(d) An offense under Subsection (a)(1) is a felony of the second degree and an offense under Subsection (a)(3) is a felony of the third degree.

TEX. PEN. CODE § 21.11.

The trial court found the elements listed in Paragraph 87 were substantially similar to Texas Penal Code section 21.11. We review the trial court's "substantially similar" finding de novo. *Brooks v. State*, 357 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

**B. Degree of Likeness of Offense Elements**

Paragraph 87 protects children under the age of sixteen, while section 21.11 protects children under the age of seventeen. Although there is a one-year age difference, the statutory ages are substantially similar. *See Anderson*, 394 S.W.3d at 536, n.17 ("For example, if one state's statute sets the age for child rape at 16 while another sets it at 17, the statutory overlap is significant, though not precise."); *Prudholm*, 333 S.W.3d at 593-94 ("The one-year age difference provides a good example of elements that are substantially similar, but not identical."). An element of both Paragraph 87 offenses is that "the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both." Art. 134, ¶ 87(b)(1), (2). Both the "sexual contact" and exposure components of Penal Code section 21.11 include a

substantially similar requirement that the act be committed with the "intent to arouse or gratify the sexual desire of any person."  TEX. PEN. CODE § 21.11(a), (c).

As to the remaining elements of the offenses, the State argues that both statutes proscribe the same conduct—touching children in a sexual manner or exposure of sexual areas.  The State acknowledges that Paragraph 87 does not focus on specific body parts, as does Penal Code section 21.11, and that Paragraph 87 encompasses actions beyond the scope of section 21.11. Nevertheless, the State contends "though the image may be a little hazy, these elements substantially mirror each other [and] are, at least recognizable to the gaze."  We disagree.

Although the elements of two statutes need not parallel one another to be substantially similar, they must criminalize a similar range of conduct.  *Anderson*, 394 S.W.3d at 539, 536, n.17 ("if one statute punishes any 'intimate' touching of a child, while a second statute punishes only the touching of the anus or genitals, the statutes are not substantially similar").  The Texas offense proscribes "sexual contact" by "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," or the exposure of "the person's anus or any part of the person's genitals, knowing the child is present; or the exposure of "the child's anus or any part of the child's genitals."  TEX. PEN. CODE § 21.11(a)(1),(2), (c).  Paragraph 87 takes a much broader approach in that it prohibits either an indecent act, or taking "indecent liberties." We believe the issue presented in this appeal is analogous to that considered by the Court of Criminal Appeals in *Anderson*.

In *Anderson*, the Court of Criminals Appeals compared the Texas indecency-with-a-child statute to a North Carolina statute that prohibited "the taking (or the attempt to take) 'any immoral, improper, or indecent liberties with a child' for the purpose of satisfying sexual desire."  *Anderson*, 394 S.W.3d at 538.  The North Carolina statute also prohibited "committing (or attempting to

commit) 'any lewd or lascivious act' on or with a child." *Id.* The *Anderson* Court quoted a North Carolina court case that described "indecent liberties" as follows:

> "Indecent liberties" are defined as such liberties as the common sense of society would regard as indecent and improper. It is not necessary that defendant touch his victim to commit an immoral, improper, or indecent liberty within the meaning of the statute. . . . Furthermore, a variety of acts may be considered indecent and may be performed to provide sexual gratification to the actor.

*Id.* (quoting *State v. Martin*, 671 S.E.2d 53, 59 (2009) (internal quotation marks and citations omitted)).

The *Anderson* Court noted that, "[n]ot only does the North Carolina statute prohibit inchoate offenses that are not included in the Texas statute, but unlike the specifically delineated conduct outlined in the Texas offense, 'immoral, improper, or indecent,' and 'lewd and lascivious' are not statutorily defined or limited. Immorality or indecency is beauty in the eye of the North Carolina jury." *Id.* "This has led to a much broader interpretation of the statutory elements, resulting in a wide variety of 'improper' conduct being punished." *Id.*

Here, Paragraph 87 also prohibits inchoate offenses that are not included in the Texas statute, and, unlike the specifically delineated conduct outlined in the Texas offense, "indecent act" and "indecent liberties" are not statutorily defined or limited. Under the military statute, the offense of committing an indecent act requires "a certain act upon or with the body of a certain person" and that "the act of the accused was indecent." But the parameters of "a certain act" is neither defined nor limited, and the word "indecent" is broadly defined as "that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." Art. 134, ¶ 90(c). "Indecent liberties" is "explained" as an act taken in a child's physical presence with the requisite intent. Art. 134, ¶ 87(c)(2). "The crucial difference is that under [Paragraph 87], almost any conduct, if performed to fulfill the actor's sexual gratification, may satisfy the 'bad act'

element of the offense." *Anderson*, 394 S.W.3d at 538 ("The focus of the [North Carolina] offense is the defendant's mental state; [therefore,] otherwise innocent conduct may result in criminal liability if the actor possesses an 'immoral, improper, or indecent' state of mind.").

Although an indecent act and indecent liberties under Paragraph 87 may include "touching through clothing, of the anus, breast, or any part of the genitals of a child" or the exposure of the party's or child's anus or any part of the genitals, Paragraph 87 may also include conduct that would clearly be insufficient to meet the elements of the Texas indecency-with-a-child statute, even if performed to arouse or gratify the sexual desire of the actor. *See United States v. Brown*, 3 U.S.C.M.A. 454, 457, 13 C.M.R. 10 (1953) (noting "it became necessary for Congress and the President to cover a wider field of sex crimes practiced on minors or committed in their presence," and "the many variations in which it is possible to take indecent liberties with a child").

The two Paragraph 87 offenses at issue here are "much broader and cover[] a *significant* amount of conduct that the Texas offense does not." *Anderson*, 394 S.W.3d at 539. "While the elements of . . . offenses need not 'parallel' one another to be 'substantially similar,' they must criminalize a similar 'range of conduct.'" *Id.* (holding the North Carolina statute "encompasses a markedly different range of conduct than the Texas offense to which it is compared."). The Paragraph 87 offenses are much broader than the Texas offense, potentially criminalizing a significant amount of conduct that is lawful in Texas. Therefore, we must conclude the elements do not display a high degree of likeness.

## C. Individual or Public Interests Protected and Impact of Elements on Seriousness of the Offense

The second part of the analysis has two distinct requirements: (1) the "individual or public interests protected" must be substantially similar, and (2) the "impact of the elements on the

seriousness of the offense" must be substantially similar. *Anderson*, 394 S.W.3d at 539; *Prudholm*, 333 S.W.3d at 595.

### 1. Public Interests

We first determine if there is a "similar danger to society" that the statute is trying to prevent. *Anderson*, 394 S.W.3d at 536. Neither party disputes the purpose of the Texas indecency with a child statute is to protect children from sexual abuse and assault. *See Anderson*, 394 S.W.3d at 539-40. However, on appeal, Fisk asserts the military statute seeks to prevent "the prejudice of good order and discipline in the armed forces" and "all conduct of a nature to bring discredit upon the armed forces." 10 U.S.C.A. § 934. According to Fisk, "[t]his is a far cry from safeguarding children from improper sexual conduct." We disagree with Fisk's narrow interpretation of the purpose of the military statute. While a goal of the UCMJ is certainly to prevent prejudice and discredit to our armed forces, "[t]he prohibition [under Paragraph 87] against [committing an indecent act or] taking indecent liberties with a child is more narrowly focused on protecting the safety, morals, and well-being of children." *United States v. Rinkes*, 53 M.J. 741, 743 (N-M. Ct. Crim. App. 2000); *see also Brown*, 3 U.S.C.M.A. at 457 (noting "evident purpose of this type of legislation is to protect children under a certain age from those acts which have a tendency to corrupt their morals"). Therefore, we conclude the "individual or public interests protected" are substantially similar.

### 2. Impact of the elements on the seriousness of the offense

We next determine if the class, degree, and punishment range of the two offenses are substantially similar. *Anderson*, 394 S.W.3d at 536. The offenses under section 21.11 of the Texas Penal Code are felonies of either the second or third degree, punishable by two to twenty years' confinement, with a possible fine not to exceed $10,000. TEX. PENAL CODE §§ 12.33; 12.34; 21.11(d). The maximum punishment for a Paragraph 87 offense is dishonorable discharge,

forfeiture of all pay and allowances, and confinement for seven years. No minimum punishment is stated. Although the degree, class, and relative punishment ranges of the offenses need not be identical, there are sufficient differences for us to conclude they reflect some similarity but not substantial similarity.

## D.    Conclusion

No single factor in the analysis is dispositive, and we must weigh all factors before determining whether an out-of-state sexual offense contains "substantially similar" elements to a listed Texas sexual offense. *Anderson*, 394 S.W.3d at 537. We conclude the elements of the two laws—Article 134, Paragraph 87, indecent acts and liberties with a child, and Texas Penal Code section 21.11, indecency with a child—do not display a high degree of likeness. Although both laws seek to criminalize sexual acts against children, the penalties for each offense are not substantially similar. After considering each of the factors, we conclude the trial court erred in finding that Fisk's prior court-martialed convictions were substantially similar to the Texas indecency-with-a-child offense.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgments to the extent they adjudicate guilt on the three counts of indecency with a child by contact, but we reverse the trial court's judgments as to punishment and remand the case to the trial court for a new sentencing hearing.

Luz Elena D. Chapa, Justice

Publish