**Affirmed and Memorandum Opinion filed October 15, 2020.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-19-00377-CR

**GLENN CASEY PORTWOOD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-DCR-061693**

## M E M O R A N D U M   O P I N I O N

Appellant Glenn Casey Portwood appeals his conviction by a jury of aggravated sexual assault of a child under fourteen. Appellant asserts two issues: (1) the trial court erred in allowing more than one outcry witness to testify regarding the same incident; and (2) the trial court abused its discretion in admitting extraneous offense evidence in violation of Texas Rule of Evidence 403. We overrule appellant's first issue because he did not raise his appellate complaint in the trial court. Additionally, we overrule appellant's second issue because he has not

established that the trial court abused its discretion in admitting the extraneous offense evidence. We affirm the trial court's judgment.

## Background

A grand jury indicted appellant for the offense of aggravated sexual assault of L.G., a child under fourteen.

### *Pre-trial Hearings*

Two pre-trial hearings are relevant to appellant's issues. We first discuss the pre-trial hearing regarding the outcry witnesses. Before the start of appellant's trial, the trial court conducted a hearing outside the jury's presence regarding the admissibility of L.G.'s outcry testimony. L.G.'s mother and forensic interviewer, Fiona Remko, testified at this hearing. The substance of both witnesses' testimony at the pre-trial hearing was consistent with their testimony at trial, which we summarize below. Although both L.G.'s mother and Remko were offered as outcry witnesses, appellant objected to Remko's testimony on the ground that it was unreliable due to a seven-month gap between the incident described and the interview. Appellant also raised a rule 403 objection to Remko's testimony. The trial court overruled appellant's objections and determined that Remko could testify at trial as an outcry witness.

At a second pre-trial hearing, the trial court considered the admissibility of an alleged extraneous offense of aggravated sexual assault against another complainant, J.M., occurring about ten years before the alleged assaults against L.G. At the hearing, J.M.'s school counselor and forensic interviewer testified. Appellant objected to the extraneous offense testimony on rule 403 grounds. The trial court overruled the objection.

The State presented the following evidence during appellant's jury trial. L.G.'s mother testified that on August 11, 2011, she left L.G., then eleven years old, at appellant's house. When the mother returned that afternoon, L.G. was very upset. L.G. told her mother that appellant pushed L.G. into his bedroom. He threw L.G. on his bed and rubbed her breasts and vagina. L.G. tried to get away, but the door was locked. L.G. told her mother she ultimately got out of the room and ran to appellant's daughter's room.

L.G.'s mother called appellant's wife and told her what happened. Appellant also spoke on the phone and admitted that he tickled L.G. and locked her in the room, but denied that he sexually assaulted her. L.G.'s mother agreed not to report the incident to police as long as appellant was not around L.G. or any other girls. However, L.G.'s mother recorded a video statement from L.G. about the incident and kept in a plastic bag the clothes L.G. was wearing on the day in question.

About seven months later, L.G.'s middle school counselor informed L.G.'s mother that L.G. reported being touched by appellant. L.G.'s mother went to the middle school and met with police officers and the school counselor. L.G.'s mother took L.G. to the Children's Advocacy Center in Fort Bend County, where Remko interviewed L.G. A few days later, L.G.'s mother took L.G. for a sexual abuse exam. According to the doctor who performed the exam, L.G.'s results were normal.

Remko testified regarding L.G.'s interview. L.G. told Remko that appellant had molested her, describing the incident as having been "almost raped." L.G., who was twelve at the time, said that appellant touched her "boobies" and penetrated her "pee pee" with his finger. L.G. explained that appellant did this twice. She tried to escape after the first assault, but appellant grabbed her and repeated the assault.

L.G. also testified. She described to the jury that when she was eleven years old, appellant took her into his bedroom, locked the door, threw her on his bed, kissed her neck, stomach, and thighs, touched her breasts, and penetrated her vagina with his fingers. She screamed "no" and called for appellant's two other children, who were in the house at the time, but she did not notice whether they responded. She briefly got away and ran to the door but was unable to get out of the room. According to L.G., appellant threw her back on the bed and repeated his assault of her. She punched him in the face, got to the door, unlocked it, and ran outside. She avoided appellant for the rest of the day. After her mother picked her up, L.G. told her what had happened. About seven months after the assault, L.G. told her school counselor about the incident. L.G. testified that the counselor called her parents and the police. L.G. spoke to Remko about the assault and underwent a medical exam.

After L.G. testified, the State sought to present evidence regarding appellant's alleged extraneous offense against J.M. Outside the jury's presence, appellant objected to any evidence regarding that alleged offense based on rule 403. The trial court overruled the objection and at appellant's request granted a running objection to all evidence concerning the alleged extraneous offense.

The State called J.M.'s former middle school counselor, who testified that in May 2001, J.M., a seventh grader, told her that an uncle—appellant—had been touching J.M. inappropriately for several months. J.M. was living with appellant and his wife at the time and reported that she "often woke up and found him in bed with her. That he had rubbed her breasts and touched her inappropriately. That he had put his fingers in her vagina." When asked by the counselor, J.M. stated that appellant tried to have intercourse with her. The counselor reported the abuse to Sugar Land Child Protective Services ("CPS").

4

J.M. underwent a forensic interview at the Fort Bend County Children's Advocacy Center. Her interviewer, Bonnie Martin, testified. According to Martin, J.M. was thirteen years old at the time of the interview. J.M. told Martin that since she had been living with appellant, he would come into her room while she was sleeping at night and fondle her vaginal area, mostly over her clothes. J.M. described the worst incident as having occurred about a week before the forensic interview, when she had come home from school early because she was not feeling well. During this incident, appellant pulled J.M.'s pants and underwear off and inserted his fingers into her vagina. He placed J.M.'s hand on his erect penis and licked J.M.'s vagina. He attempted to penetrate J.M.'s vagina with his penis but was unsuccessful because she kept moving; he also attempted to penetrate J.M.'s anus with his penis. Appellant licked J.M.'s breasts and masturbated to ejaculation. J.M. escaped and ran upstairs. Appellant followed and told J.M. not to tell anyone what happened.

J.M. was thirty-one at the time of trial. She testified that when she was in seventh grade, she lived with her father in the Pasadena/Deer Park area. Her father had a heart attack and could not care for her, so she went to stay with her uncle—appellant—and his wife in Fort Bend County. J.M. said that after coming home from school early one day, appellant came into the room where she was sleeping and sexually assaulted her. J.M.'s description of the assault was consistent with Martin's: appellant touched, licked, and put his fingers in her vagina; he attempted to put his penis in her vagina but was unsuccessful; and he also licked and touched her breasts.

The jury found appellant guilty as charged in the indictment. Appellant elected for the trial court to assess punishment. The trial court sentenced appellant

to thirty years' confinement in the Texas Department of Criminal Justice, Institutional Division.[1]

Appellant timely appealed.

## Analysis

Appellant challenges his conviction in two issues. First, he complains that more than one witness was permitted to testify as an outcry witness in violation of Texas Code of Criminal Procedure article 38.072. Second, he contends that the trial court abused its discretion in admitting the alleged extraneous offense involving J.M. over his rule 403 objection.

### A. Appellant did not preserve his outcry witness argument.

Texas Code of Criminal Procedure article 38.072 permits the State, in certain cases involving crimes against children or disabled persons, to present the complainant's out-of-court statements describing the offense, which may otherwise be excludable as hearsay. Tex. Code Crim. Proc. art. 38.072; *see also* Tex. R. Evid. 801(d) (defining hearsay), 802, 803; Tex. Penal Code § 22.021. The complainant's out-of-court statement is commonly referred to as an "outcry," and a witness who presents such statements is called an "outcry witness." *See Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child made a statement regarding the offense, extraneous crime, wrong, or act. *Id.* Before an outcry witness testifies, the trial court must hold a hearing outside the jury's presence and determine whether the outcry is reliable, based on the time, circumstances, and content of the statement. *Id.* at 484-85; *see also* Tex. Code Crim. Proc. art. 38.072, § 2(b)(2).

---

[1] This sentence is to run consecutively to appellant's sentence for an unrelated possession of child pornography offense in federal prison.

6

Generally, hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see also Rosales v. State*, 548 S.W.3d 796, 806-07 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

In his first issue, appellant contends the trial court erroneously permitted more than one outcry witness to testify regarding the same event. Such as assertion must first be raised at trial by a timely objection. *See Polk v. State*, 367 S.W.3d 449, 452 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Gibson v. State*, 595 S.W.3d 321, 325 n.3 (Tex. App.—Austin 2020, no pet.) (appellant preserved complaint about multiple outcry witnesses by arguing at 38.072 hearing that the only proper outcry witness was the child's mother to whom the child first discernibly described the offense). Appellant did not object that the State improperly designated multiple outcry witnesses or that L.G.'s mother's testimony and Remko's testimony concerning L.G.'s outcry statements impermissibly covered the same events. Appellant therefore has not preserved error, and his appellate complaint presents nothing for our review. *See, e.g.*, *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (when complaint on appeal does not comport with trial objections, nothing is presented for appellate review); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009) (same); *Moreno v. State*, No. 14-18-00113-CR, 2019 WL 2000905, at *4 (Tex. App.—Houston [14th Dist.] May 7, 2019, pet. ref'd) (mem. op., not designated for publication); *Reyes v. State*, No. 14-16-00711-CR, 2017 WL 5196212, at *8-9 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, no pet.) (mem. op., not designated for publication); *see also Bowen v. State*, No. 01-18-00612-CR, 2019 WL 6314904, at *7-8 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, no pet.) (mem. op., not designated for publication) (overruling appellate complaint

concerning multiple outcry witnesses for same incident because it did not comport with trial objection to reliability of outcry testimony).

We overrule appellant's first issue. *See Moreno*, 2019 WL 2000905, at *4.

**B.    The trial court did not abuse its discretion in overruling appellant's rule 403 objection to the extraneous offense evidence.**

In his second issue, appellant contends that the trial court abused its discretion in admitting evidence concerning appellant's alleged assault of J.M. because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.* Rule 403 favors the admission of relevant evidence, and we presume that the probative value of relevant evidence exceeds any danger of unfair prejudice. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Under rule 403, evidence must be excluded only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Hammer*, 296 S.W.3d at 568.

We are called upon to apply a rule 403 analysis to the admission of extraneous offense testimony. Evidence that a defendant has committed certain extraneous offenses against a child may be admitted in the trial of a defendant for aggravated sexual assault of a child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b). Before extraneous offense evidence may be introduced, however, the trial judge must

8

conduct a hearing outside the jury's presence to determine "that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt[.]" *Id.* § 2-a. Even when evidence of a defendant's extraneous acts is otherwise relevant and admissible under article 38.37, the trial court is required to conduct a rule 403 balancing test upon proper objection or request. *See Distefano v. State*, 532 S.W.3d 25, 31-32 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Appellant argues that the rule 403 balancing test weighs in favor of excluding evidence concerning appellant's assault of J.M. Appellant does not contend that the State failed to prove beyond a reasonable doubt that appellant assaulted J.M.

> In undertaking a rule 403 analysis, we
>
> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Because trial courts are best suited to make the call on these substantive admissibility questions, we review admissibility rulings under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). This standard requires us to uphold a trial court's admissibility ruling when that decision is within the zone of reasonable disagreement. *Id.*

1. *Probative Value*

As used in rule 403, "'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Giglioblanco*, 210 S.W.3d at 641. The extraneous offense evidence in this case was very similar to the charged offense in several respects: both assaults occurred against girls of approximately the same age; both assaults occurred in appellant's bedroom in his Fort Bend County home; both assaults involved similar conduct, namely, digital penetration of the complainants' vaginas and licking or kissing of their breasts. The trial court reasonably could have concluded that the unique similarities between the offenses heightened the probative value of the extraneous offense. *See Robisheaux v. State*, 483 S.W.3d 205, 219-20 (Tex. App.—Austin 2016, pet. ref'd) ("Although the remoteness of the extraneous offenses undermines their probative value, we believe that the district court could have reasonably determined that the remarkable similarities between the extraneous offenses and the charged offenses strengthened the probative force of the evidence."). Indeed, as other courts have held, "evidence that a defendant has sexually abused another child is relevant to whether the defendant sexually abused the child-complainant in the charged case." *Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (evidence that defendant committed extraneous sexual offenses against two other children was "straightforward and directly relevant to the only issue in the case, namely whether [defendant] abused [complainant]").

Appellant insists that the absence of relatively close temporal proximity between the charged offense and the extraneous offense—approximately ten years—

10

diminishes the extraneous offense's probative value. *See West v. State*, 554 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Remoteness can lessen significantly the probative value of extraneous-offense evidence."). We do not disagree, but that fact does not require exclusion. *See id.* at 239-40 (explaining that "remoteness is but one aspect of an offense's probativeness" and concluding that evidence that defendant had previously committed unspecified "lewd or lascivious" acts with two juveniles twenty-nine to thirty years prior to trial was admissible); *Robisheaux*, 483 S.W.3d at 220.

The trial court also could have concluded that the State's need for the evidence was appreciable given that sexual assault prosecutions frequently can involve a swearing match between the complainant and the defendant. Exclusion on rule 403 grounds should be used "sparingly" to exclude relevant, otherwise admissible evidence, especially in "he said, she said" sexual assault cases such as this one. *See Hammer*, 296 S.W.3d at 568. During appellant's opening statement, he told the jury that "there is no physical evidence to show that [appellant] molested either one of those girls." Counsel emphasized that theme during cross-examination of third-party witnesses by establishing that none of them saw appellant behave inappropriately with L.G. Although Remko testified regarding L.G.'s outcry, she only repeated what L.G. told her about the alleged assault. *See West*, 554 S.W.3d at 240; *Robisheaux*, 483 S.W.3d at 220. Without the extraneous offense evidence concerning J.M., "the State's case essentially would come down to the word of [the] complainant against appellant's." *West*, 554 S.W.3d at 240; *see also Robisheaux*, 483 S.W.3d at 220; *Gaytan*, 331 S.W.3d at 226. Thus, the State's need for this evidence weighs strongly in favor of admission.

11

2.    *Unfair prejudice*

Under rule 403, the probative value of the evidence is weighed against the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. "'[U]nfair prejudice . . . refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641. The trial court could have reasonably concluded that the extraneous offense testimony did not have a tendency to suggest decision on an improper basis.

Evidence that a defendant previously abused a child is inflammatory and can be unfairly prejudicial. *See West*, 554 S.W.3d at 240. Appellant claims that the evidence regarding his assault of J.M. was particularly prejudicial because "the allegations were far more egregious than the allegations made by LG, in that they detailed continuous, violent conduct, attempts at penetration, forced masturbation, grooming, and threats if JM told anyone what had occurred." Although we disagree that J.M.'s allegations were as inflammatory as appellant characterizes them, the extraneous offense evidence was more egregious than the evidence supporting the charged offense. *E.g.*, *Fisk v. State*, 510 S.W.3d 165, 175 (Tex. App.—San Antonio 2016, pet. ref'd). Thus, this factor weighs in favor of excluding the evidence. *See id.*

Appellant also argues that the presentation of the extraneous offense evidence "took far longer than the charged offense." The record shows otherwise: presentation of J.M.'s allegations took about 160 pages of the trial record, while presentation of the rest of trial took about 330 pages. Thus, "[a]lthough the development of the evidence of the extraneous acts took some time and more than one witness, we conclude the trial court could have reasonably determined it was not so overwhelming as to distract the jury from the charged conduct." *Id.*; *cf. also*

12

*Distefano*, 532 S.W.3d at 33-34 (concluding that, despite the fact that presentation of extraneous act took "approximately half of the trial," trial court did not abuse its discretion in admitting extraneous evidence after balancing 403 factors). The State is burdened with proving the extraneous offense beyond a reasonable doubt so it is not surprising that meeting its burden might require more than one witness and consume a not-insubstantial about of trial time.

The remaining factors also do not weigh in favor of exclusion. The evidence of J.M.'s allegations involved straightforward testimony that was not likely to confuse the ultimate issues for the jury to decide, nor was the jury likely to have been "misled" by this evidence for rule 403 purposes. *See Gigliobianco*, 210 S.W.3d at 641 (explaining that "'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence"). Additionally, on appellant's request, the jury charge contained appropriate instructions limiting the jury's consideration of J.M.'s allegations and emphasizing that appellant was on trial "solely on the charge contained in the indictment."

Evidence of an extraneous sexual offense "will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way." *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002). But rule 403 requires the exclusion of relevant evidence only if the danger of unfair prejudice, delay, or needless repetition *substantially outweighs* the probative value. *Id.*; Tex. R. Evid. 403. We conclude that the trial court's decision to admit the extraneous evidence concerning J.M.'s allegations fell within the zone of reasonable disagreement. *See Hammer*, 296 S.W.3d at 568; *Wheeler*, 67 S.W.3d at 889; *West*, 554 S.W.3d at 241; *Distefano*, 532 S.W.3d at 34; *Fisk*, 510 S.W.3d at 175; *Robisheaux*, 438 S.W.3d at 217-21; *Gaytan*, 331 S.W.3d at 226-28. Thus, the trial court did not abuse its discretion in admitting the evidence concerning J.M.'s allegations.

13

We overrule appellant's second issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).