**AFFIRMED as MODIFIED and Opinion Filed March 21, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00018-CR

### RICHARD CLAYTON KIMBERLIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-80175-2016**

## MEMORANDUM OPINION
Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Bridges

A jury convicted appellant Richard Clayton Kimberlin of two counts of indecency with a child. The jury sentenced him to three years' confinement for count one and eight years' confinement, probated, for the second count. On appeal, he challenges the trial court's admission of (1) extraneous offense testimony; (2) expert testimony used to bolster the credibility of the complainant; and (3) investigator testimony commenting on the complainant's truthfulness and appellant's failure to testify. As modified, we affirm the trial court's judgments.

### Background

In 2013, appellant's mother married complainant's father creating a blended family with three teenaged children (Stepmother had a son and Father had two daughters). Shortly after the marriage, complainant's older sister, RS, confided in complainant that appellant raped her. During

a family meeting, appellant denied anything happened. Stepmother did not believe RS, and the parents encouraged RS to change her story. Stepmother told RS that complainant would be sent to CPS if she said anything.

About a month later, RS recanted because she wanted to end the pressure by her parents and for it all "to be over." Shortly thereafter, based on the advice of a counselor, Father and Stepmother sent RS to a Christian boarding school in Florida. The family also moved and enrolled complainant in a new high school so people would not hear about RS. Complainant described the family dynamic as unhappy because she supported RS; however, the dynamic improved after complainant's eighth grade year.

When RS moved home in the fall of complainant's freshman year, appellant temporarily moved out. When appellant moved back, RS avoided him. Complainant and appellant tried to get along because "everyone was happier when we were trying to be a family and not [. . .] mad at each other all the time." For a while, she even felt like appellant was a brother.

The events in question occurred in October 2015 when appellant was nineteen years old and complainant was fifteen years old.[1] Appellant and complainant were watching a movie in his room. They fell asleep in his bed before the movie ended. Stepmother briefly came in and talked with them around 2 a.m., but they both fell back asleep. Complainant woke again around 3 a.m. with appellant's hand grabbing and rubbing her breast under her t-shirt. He tried to put his hand down her pants, but she rolled over onto her stomach to avoid him. Appellant tried to "come from the other way" and put his hand between her thighs attempting to rub her privates.[2] She kept moving "so he would maybe know that I was awake." When he continued to try and rub between her legs, she left the room. She was scared and did not know what to do.

---

[1] Complainant was eighteen years old at trial.

[2] She explained "private part" meant "vagina."

Once she got to her room, she called Abraham Marquez because she trusted her friends more than her parents. She did not go into details, but told him what happened. Marquez testified she was crying and sounded scared. He encouraged complainant to tell an adult, but based on RS's prior experience, complainant was afraid she might get sent to Florida or no one would believe her.

The following day, Marquez sought advice from a trusted teacher who then informed a high school counselor that a student may have been raped or assaulted over the weekend. Based on the information, the counselor talked to complainant. Complainant was quiet and timid. She expressed she was nervous and scared. She did not confide in the counselor immediately, but eventually told her because she knew it was something she should not keep to herself. Based on the counselor's prior observations of complainant, she did not believe complainant was exaggerating, making up a story, or acting out. Complainant also talked to a school resource officer, who contacted Father.

Later that night, Stepmother, Father, complainant, and appellant sat down to talk about what happened. Appellant did not deny it, but instead said he did not remember anything happening.

During a forensic interview at the Children's Advocacy Center, complainant identified appellant as the person who inappropriately touched her.

Appellant was arrested and indicted on two counts of indecency with a child. The jury convicted him of both counts, and this appeal followed.

### Admission of Extraneous Offenses

In his first issue, appellant argues the trial court abused its discretion by allowing two witnesses to testify pursuant to article 38.37 when the allegations were dissimilar to complainant's allegations and the only common thread was appellant's involvement. *See* TEX. CODE CRIM. PROC.

ANN. art. 38.37. He claims the State tried him "via character assassination under the cliché theory of 'where there's smoke, there is fire.'" The State responds the trial court did not abuse its discretion by admitting the testimony because it did not violate article 38.37, and its value was more probative than prejudicial.

Article 38.37 of the code of criminal procedure permits the introduction of "evidence of extraneous offenses or acts" in certain types of sexual abuse cases. *Id*. The statute allows admission of evidence that a defendant committed a separate offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id*. art. 38.37, § 2(b).

We review a trial court's ruling on admissibility of extraneous offenses for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's decision is supported by the record, there is no abuse of discretion, and the trial court will not be reversed. *Id*. In determining whether the trial court abused its discretion, we may not substitute our opinion for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Article 38.37, section 2-a(1) requires a trial court to determine whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1). Appellant argues the trial court could not have rationally determined that the State could prove beyond a reasonable doubt that appellant raped RS.

At a hearing outside the jury's presence, the State presented RS's two rape allegations against appellant. The alleged incidents occurred in October 2013 and February 2014. Appellant objected to "relevance, 403." He further argued the two offenses were not close in time and RS recanted. Appellant did not object or argue that the evidence was inadequate to support a jury

–4–

finding beyond a reasonable doubt that he raped RS on two occasions. The trial court overruled the objection and allowed RS's testimony.

RS then proceeded to testify about the two different assaults. At the conclusion of RS's testimony, appellant again objected to her testimony and argued the trial court did not make the required 38.37, section 2-a(1) finding in the pretrial hearing. "[W]e touched on this at pretrial, but I believe it was premature . . . . There was no such determination made." He asked to strike RS's testimony and for a mistrial. The trial court again overruled the objections.

To the extent appellant argues the trial court did not conduct a sufficient hearing to satisfy the requirement of article 38.37, he waived his complainant by not objecting and raising this argument to the trial court during the hearing when the trial court had the opportunity to cure any potential error. *See Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. ref'd) (concluding failure to object to lack of hearing under article 38.37 was subject to general requirement of preservation under rule 33.1 and subject to forfeiture). Regardless of the untimely nature of appellant's objection, article 38.37 appears to ask the trial court to do no more than an appellate court would do in a sufficiency review. *See Carillo v. State*, No. 08-14-00174-CR, 2016 WL 4447611, at *8 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (not designated for publication). Because the testimony of a child victim alone is sufficient to support a sexual assault conviction, RS's testimony would support the trial court's 38.37 determination. *Id.*; *see also IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd). However, the trial court must still conduct a balancing test under rule 403 before admitting the extraneous offense. *See Robisheaux v. State*, 483 S.W.3d 205, 217–18 (Tex. App.—Austin 2016, pet. ref'd); *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.). Appellant made a rule 403 objection; therefore, we consider his argument.

A trial court must exclude evidence if its probative value is outweighed by a danger of unfair prejudice, confuses the issues, misleads the jury, causes undue delay, or needlessly presents cumulative evidence. TEX. R. EVID. 403. Probative value is the measure of how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Unfair prejudice refers to a tendency to "tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

A rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

Rule 403 does not require the balancing test be performed on the record; rather, in overruling a rule 403 objection, the trial court is assumed to have performed the balancing test and determined the evidence is admissible. *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd). There is a presumption that relevant evidence is more probative than prejudicial. *Belcher*, 474 S.W.3d at 848. A reviewing court is to reverse the trial court's rule 403 determination "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

RS testified that in October 2013, appellant texted her one night and told her she left her blanket in his room. At that time, she was fifteen years old, and appellant was eighteen years old. When she went to get her blanket, he locked the door behind her. She tried to leave, but appellant pulled her down onto the couch and would not let her go. She "kind of froze," and then he raped her. She did not fight back or yell. She did not tell Father and Stepmother because she did not

think they would believe her. They were "very irritated" she was not cooperating and supporting their marriage. Appellant raped her again in February 2014.

In March 2014, RS told complainant what happened. RS was worried about complainant getting closer with appellant, and RS did not want anything to happen to her.

Appellant claims RS's testimony was inadmissible under rule 403 because she recanted, she was not credible, and her testimony led to distractions. Despite appellant's attacks on the admission of the evidence, RS's testimony was probative and provided valuable context in which the jury could evaluate complainant's allegations. For example, appellant assaulted both step-sisters in his bedroom when they were fifteen years old indicating his propensity to engage in sexual conduct with younger family members in the confines of his bedroom. *See, e.g., Fisk v. State*, 510 S.W.3d 165, 174 (Tex. App.—San Antonio 2016, no pet.) (evidence of alleged prior sexual abuse of young family members in homes defendant visited was probative of his propensity to engage in sexual contact with young females); *Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd) (concluding testimony from two extraneous offense witnesses that sexual abuse occurred in same home as complainant was "probative as it provides valuable context in which [complainant's] claims could be evaluated by the jury"). Further, RS's testimony that Father and Stepmother sent her to Florida after she told them about the assaults assisted the jury in understanding why complainant was hesitant to tell her family what she experienced. *Bradshaw*, 466 S.W.3d at 883 (concluding testimony "further illuminated the circumstances" surrounding victim's outcry).

RS's testimony did not take a long time to develop compared to the rest of the evidence. Rather, her entire testimony encompassed approximately thirty-two pages in a two-volume reporter's record of the guilt-innocence proceeding; therefore, the sheer volume of the evidence did not result in unfair prejudice. *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013)

(stating the admission of voluminous amounts of extraneous-offense character evidence can cross the threshold to unfairly prejudicial).

Her testimony did not mislead, confuse, or distract the jury from the main issue of the case—whether appellant sexually assaulted complainant. To the extent appellant argues her testimony distracted the jury because it included, in part, her psychological history, most of these alleged "distractions" were brought out by appellant during cross examination.

Although appellant argues the evidence amounted to a character assassination, article 38.37 recognizes evidence of this type is, by definition, character evidence, but is admissible notwithstanding. Thus, while this evidence was prejudicial, rule 403 does not allow a trial court to exclude otherwise relevant evidence when the evidence is "merely prejudicial." *Id.* We acknowledge the extraneous offense evidence was of a more serious nature than the charged offense; however, after balancing the rule 403 factors, we conclude the trial court did not abuse its discretion by admitting RS's testimony. *See Fisk*, 510 S.W.3d at 175 (concluding extraneous offense admissible despite being more serious than charged offense).

We now consider whether the trial court abused its discretion by admitting BW's testimony. Appellant's entire argument challenging BW's testimony is as follows:

> [BW]'s testimony was Appellant repeatedly asked her to show him her vagina during a movie. Unlike RS's or NS's accusations – [BW]'s didn't involve any touching whatsoever. Again, the only common denominator is Appellant.

Appellant has not specifically argued why the trial court abused its discretion by admitting the testimony under article 38.37.[3] We liberally construe appellant's argument to be attacking the admissibility under rule 403.

---

[3] During the 38.37 hearing, appellant argued that asking a female to show her vagina was not a crime. Appellant has not presented this argument on appeal. However, the trial court "believed" it "probably" fell under sexual performance or indecency of a child and went to appellant's intent.

BW testified appellant was a family friend she had known her entire life. They lived close to each other and frequently hung out together while growing up despite a four-year age difference. In August of 2013, when she was thirteen, the two were watching a movie at her house when he asked to see her vagina. She said no and thought he was kidding, but he kept asking throughout the movie. He told her it was okay because they were just friends. His repeated requests made her uncomfortable, and she did not acquiesce. She did not tell anyone what happened because she did not understand at the time why he was making such a request, and she did not want to get him in trouble. After RS said appellant raped her, BW had a better understanding of her experience and realized such behavior was not normal.

As with RS's testimony, this evidence was prejudicial to appellant's case, like almost all evidence of extraneous offenses of child sexual abuse. However, rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. *Pawlak*, 420 S.W.3d at 811. BW's testimony was probative to show appellant's propensity to make sexual advances toward teenage girls that he knew. *See, e.g.*, *Swegheimer v. State*, No. 02-17-00095-CR, 2018 WL 1528477, at *6 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication) (extraneous offense evidence not unfairly prejudicial because evidence probative of defendant's propensity to make sexual advances toward underage girls); *Fisk*, 510 S.W.3d at 174. Her entire testimony encompassed approximately sixteen pages of the record; therefore, it did not take long to develop. Given the brevity and nature of her testimony, it is unlikely to have mislead or distracted the jury from the main issue of the case. Under the appropriate standard of review, we are unable to conclude that the trial court abused its discretion in admitting BW's testimony. *See Pawlak*, 420 S.W.3d at 810; *see also Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009) (explaining rule 403 should be used sparingly to exclude

relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in "he said, she said" cases involving sexual assault).

We overrule appellant's first issue.

**Expert Witness Testimony**

In his second issue, appellant contends the trial court abused its discretion by allowing two expert witnesses to testify. He claims Dan Powers lacked knowledge of the specific facts of this case and improperly bolstered the complainant's credibility, and Lisa Martinez also improperly bolstered the complainant's credibility.

We begin by addressing Powers, the chief operating officer of the Children's Advocacy Center of Collin County. Prior to his testimony, the court conducted a 705 hearing outside the presence of the jury to determine the admissibility of his testimony. *See* TEX. R. EVID. 705(b) ("Before an expert states an opinion or discloses the underlying facts or data, an adverse party . . . in a criminal case must be permitted to examine the expert about the underlying facts or data."). At the conclusion of the hearing, appellant objected that Powers had no independent basis or knowledge of the facts of this case and his testimony was repetitive, cumulative, and not helpful to the jury. He did not challenge Powers's qualifications. On appeal, appellant asserts Powers's testimony was irrelevant because it did not "fit" the facts of the case and was improper bolstering. We do not address whether Powers's testimony was improper bolstering because appellant did not raise this complaint to the trial court. *See* TEX. R. APP. P. 33.1. We will, however, review whether Powers's testimony was relevant.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion and reverse only when the trial court's decision was so clearly wrong that it lies outside the zone of reasonable disagreement. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). The mere fact that a trial court may decide a matter within its discretionary authority differently

than a reviewing court does not demonstrate such an abuse. *Bickems v. State*, No. 05-01-01167-CR, 2002 WL 1741684, at *1 (Tex. App.—Dallas July 29, 2002, pet. ref'd) (not designated for publication).

For expert testimony to be admissible, it must be both reliable and relevant. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Relevance is a "looser notion than reliability" and is a "simpler, more straight-forward matter to establish." *Id.*; *see also Williams v. State*, 2013 WL 3974045, at *9 (Tex. App.—Dallas Aug. 2, 2013, pet. ref'd) (mem. op., not designated for publication). To determine relevance, we ask whether the evidence will assist the trier of fact and is sufficiently tied to the facts of the case. *Tillman*, 354 S.W.3d at 438. There is no requirement the expert have personal knowledge of the facts for his testimony to be relevant. *Williams*, 2013 WL 3974045, at *9; *see also Jordan v. State*, 928 S.W.2d 550, 556 n.8 (Tex. Crim. App. 1996) (citing *Fielder v. State*, 756 S.W.2d 309, 320 (Tex. Crim. App. 1988) (noting expert can offer opinion based solely on hypothetical questions posed at trial)). Rather, to be relevant, the expert must tie the facts of the case to the principles that are the subject of his testimony. *Tillman*, 354 S.W.3d at 438; *Williams*, 2013 WL 3974045, at *9.

Powers testified he has bachelor's and master's degrees in clinical social work. As a licensed clinical social worker, he can diagnose and treat mental and emotional disorders. He emphasized the importance of mental health counseling for sexual abuse victims because "it's a life-changing event and really can change the direction of a child's life." He stressed the importance of not judging or trying to qualify a victim's experience. For example, a child touched over a shirt may experience trauma similar to a child touched under a shirt.

He testified the number one indicator of a child's ability to recover from sexual abuse is the family's support. When a child does not have family support, it negatively impacts her ability to heal and cope. The family dynamic is also a factor in recantations because children look to

adults for how to react and deal with things and if an adult does not believe the child's outcry, then she may say it did not happen.

He explained that if a family member saw a consequence to another family member for outcrying, such as the family member being sent away, then a subsequently abused child could have difficulty disclosing abuse to a family member. In such situations, it would not be surprising for a victim to first tell a friend, especially if the victim is an adolescent because adolescents tend to bond more to their peers than parents. It is also common for a child to ask the friend not to tell because of the guilt and shame involved with the abuse.

Powers testified why a child who knows of previous sexual abuse allegations against an individual would later put herself in the situation to be alone with the abuser. He explained a child does not reason like an adult and often does not think through a scenario and consider possible consequences. When a child is in a trusted relationship, "the power of that denial is pretty strong," and a child might "freeze" when someone in a trusted relationship hurts them.

He emphasized it is common for a child to act normal around the abuser because the child may not want to expose the secret.[4]

Powers described the potential devastating effect of family members forcing a child to confront her abuser because it sends a message to the child she is not believed. It provides the accuser with an increased sense of power and may reinforce a desire to do it again because many sex offenders continue to offend until they experience consequences, not mere accusations. Further, abuse happening in a home with other family members present is common, as it is another way for an abuser to show power and control. The abuser sends a message to the child that he can get away with it even with others in the home. He explained it is common for abuse to happen when a child is sleeping because a child is most vulnerable while sleeping.

---

[4] Several witnesses testified complainant was acting normal around appellant at a family gathering the day after the assault.

Having reviewed Powers's testimony, the record indicates the State offered his testimony to explain how abuse impacts a child and to help the jury understand why a child may react a certain way because of abuse. The State's questions, often through hypotheticals tied to facts of this case, drew directly from Powers's experience with children and mirrored complainant's testimony. Thus, Powers's testimony was sufficiently tied to the facts of the case to meet the "simple requirement that it be helpful" to the jury. *Jordan*, 928 S.W.2d at 556; *Williams*, 2013 WL 3974045, at *9 (concluding expert's testimony explaining how children get involved in prostitution and why they lie was sufficiently linked to facts of case to be relevant). Accordingly, the trial court did not abuse its discretion by allowing Powers to testify.

To the extent appellant contends "Powers'[s] role in this trial was akin to a political pundit on MSNBC or Fox News spinning a particular story into a circular echo chamber," he ignores his defense counsel's vigorous cross-examination of Powers, which included attacking his lack of any personal knowledge of the people involved in the case and his admission that children sometimes lie to get attention or seek revenge. As such, these arguments go to the credibility, not the relevancy, of his testimony.

We next consider whether the trial court abused its discretion by allowing Lisa Martinez to testify. Martinez has been the case management supervisor for the Collin County Children's Advocacy Center for approximately twelve years. Her duties include coordinating, facilitating, and supervising forensic interviews. Appellant argues, "The State's real reason for calling [her] was for her to wink and smile at the jury and give them a thumbs up about [complainant's] testimony. In other words – bolstering." The State responds her testimony was not bolstering, but rather assisted the jury in understanding complainant's behavior and corroborating her story, which courts have routinely held is proper.

The trial court held a hearing outside the jury's presence to consider Martinez's testimony. At the conclusion of the hearing, defense counsel objected to her testimony as redundant and bolstering. The trial court overruled appellant's objection and admitted Martinez's testimony for "all the areas designated, including reaffirmation and recantation."

On appeal, appellant argues her testimony was improper bolstering. Bolstering is "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantially contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); *see also McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *9 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication). Evidence that corroborates another witness's story should not be considered bolstering when it has an incremental tendency to establish a fact of consequence. *Cohn*, 849 S.W.2d at 820; *McKinney*, 2016 WL 39633369, at *9.

Appellant has not pointed this Court to any specific testimony he considers bolstering, and a review of her testimony does not support such a claim. Martinez's testified complainant did not appear coached, used age-appropriate terms, and provided sensory details. Courts have routinely allowed experts to testify that a child did not exhibit indications of coaching or manipulation. *See Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997); *Hernandez v. State*, No. 03-12-00805-CR, 2015 WL 412834, at * 5 (Tex. App.—Austin Jan. 30, 2015, no pet.) (mem. op., not designated for publication); *Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.); *Reynolds v. State*, 227 S.W.3d 355, 366 (Tex. App.—Texarkana 2007, no pet.).

Further, experts may testify that a child exhibits behavioral characteristics shown to be common among children who have been abused. *See, e.g.*, *Charley v. State*, No. 05-08-01691-CR, 2011 WL 386858, at *4 (Tex. App.—Dallas Feb. 8, 2011, no pet.) (mem. op., not designated

–14–

for publication) (allowing expert to testify to sensory details child victim provided in forensic interview because such details are "very important" in considering whether a child has been coached). Martinez explained that disclosure may be a process. Some children may go through denial while others go through tentative disclosures to gage a person's reaction before sharing more. Some children recant and may later reaffirm, meaning they take back the recant.

Based on her training and experience, children recant and take back allegations because (1) an unsupportive caregiver does not believe the allegation or wants the child to take it back; (2) the child feels loyalty to the perpetrator and does not want the person to get in trouble; or (3) the child wants to avoid getting in trouble. A child's motivation for later reaffirming may stem from (1) realizing they need to protect someone else from abuse; (2) growing older and understanding the ramifications and wanting justice; or (3) wanting to tell the truth despite previous reasons for recanting. When asked if complainant exhibited any barriers to disclosure, Martinez said complainant was afraid of getting in trouble, not being believed, and Stepmother reacting negatively. Such testimony is not improper bolstering. *See, e.g., Chavez v. State*, 324 S.W.3d 785, 789 (Tex. App.—Eastland 2010, no pet.) (testimony regarding behavioral characteristics of children whose mothers do not support their outcries of sexual abuse was not improper).

Martinez did not testify about any specific details of complainant's abuse, nor was she asked whether she believed complainant was telling the truth.[5] Thus, she did not, through her testimony, decide the issue for the jury, but instead she assisted the trier of fact by explaining the

---

[5] On cross-examination, defense counsel asked whether it was possible complainant lied. Martinez answered,

> I do not make any determination as far as - - I'm not a lie detector. I can't tell whether someone is telling the truth or not, especially in a trial. That's up to the jurors to do. There's no training or anything that anyone can give you to tell you whether this person is telling the truth or not besides - - you know, something like that. So there's no determination that I make whether she's telling the truth or not.

Appellant has not argued Martinez improperly commented on complainant's truthfulness, which is outside the bounds of expert testimony. *See Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993) (holding State may not elicit expert testimony that particular child is telling the truth or that child complainants as a class are worthy of belief).

forensic interview process, why children who suffer abuse may delay an outcry, later recant and then reaffirm abuse, and describing behavioral characteristics common among abused children that complainant exhibited. Martinez's testimony had an "incremental tendency to establish a fact of consequence" by corroborating complainant and, therefore, is not bolstering. *See Cohn*, 849 S.W.2d at 820 ("Evidence that corroborates another witness's story, in the sense that it has an incremental tendency to establish a fact of consequence, should not be considered bolstering."); *McKinney*, 2016 WL 39633369, at *9 (same). The *sole* purpose of her testimony was not to convince the jury complainant was worthy of credit. *See Cohn*, 849 S.W.2d at 819; *see also McKinney*, 2016 WL 3963369, at *9. Accordingly, the fact that Martinez's testimony corroborated complainant's testimony does not render it inadmissible. The trial court's decision to admit her testimony was not so clearly wrong that it lies outside the zone of reasonable disagreement and resulted in an abuse of discretion. *McDonald*, 179 S.W.3d at 576; *Rhomer v. State*, PD-0448-17, 2019 WL 408186, at *10 (Tex. Crim. App. Jan. 30, 2019) (Walker, J., concurring) ("[A]buse occurs only if the reviewing appellate court can say, with confidence, that no reasonable perception of the matter under consideration could have yielded the decision made by the trial court.").

Appellant's second issue is overruled.

### Complainant's Truthfulness

In his third issue, appellant argues the trial court abused its discretion by allowing Officer Stasik to testify to complainant's truthfulness. The State responds appellant waived his issue or alternatively, the trial court did not abuse its discretion and error, if any, was harmless.

During redirect examination, Officer Stasik emphasized that complainant's statements to multiple individuals were consistent, and she did not change any details. The State asked, "Does that mean anything or in this case did it mean anything to you?" He answered, "I believe she was

giving me, you know, an honest statement." Defense counsel objected his answer called for speculation. The trial court overruled the objection.

Appellant objected to Officer Stasik's testimony because it called for speculation, not because it was a comment on complainant's truthfulness. "We are not hyper-technical in examination of whether error was preserved, but the point of error on appeal must comport with the objection made at trial." *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). Appellant's trial objection does not comport with his argument on appeal; therefore, he presents nothing for review. *Id.*; *see also* TEX. R. APP. P. 33.1. We overrule appellant's third issue.

### Fifth Amendment Right Not to Testify

In his final issue, appellant argues the trial court improperly allowed testimony in violation of article 38.08. *See* TEX. CODE CRIM. PROC. art. 38.08 (". . . the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause). The State responds appellant waived his argument, or alternatively, article 38.08 does not apply.

During Officer Stasik's direct examination, the following exchange occurred:

> [State]: So once this forensic interview was completed with [complainant], what was your next step, I guess, in this investigation?
>
> [Officer Stasik]: The Princeton Police Department had already obtained what we call witness statements from the school counselor, from the initial outcry witness. So my next step was to talk to the person who is accused of this offense and to try to get a statement from that particular person.
>
> [Defense Counsel]: Objection, Your Honor, as to the referencing of my client's Fifth Amendment Rights.
>
> [State]: That's separate. We're not talking about that.
>
> The Court: Overruled.

An objection stating one legal basis at trial may not be used to support a different legal theory on appeal.  *See Bekendam*, 441 S.W.3d at 300; *see also Hunter v. State*, No. 05-14-01146-CR, 2016 WL 1085556, at *4 (Tex. App.—Dallas Mar. 21, 2016, pet. ref'd) (mem. op., not designated for publication).  Accordingly, appellant's 38.08 issue on appeal does not comport with and is not preserved by the Fifth Amendment objection at trial.  *See Hunter*, 2016 WL 1085556, at *4 (Fifth Amendment objection at trial did not preserve article 38.08 issue raised on appeal).  Appellant's fourth issue is overruled.

### Modification of Judgments

The judgments indicate, "The age of the victim at the time of the offense was **FOURTEEN (14) YEARS**."  However, the record indicates she turned eighteen on October 21, 2017 and the incident occurred prior to October 6, 2015.  Therefore, complainant was fifteen at the time of the offense.

We are authorized to reform the judgment to make it "speak the truth" when we have the necessary data and information to do so.  *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  Therefore, on our own motion, we modify the judgments to reflect that "The age of the victim at the time of the offense was **FIFTEEN (15) YEARS**."  TEX. R. APP. P. 43.2(b).

### Conclusion

As modified, the judgments of the trial court are affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
180018F.U05

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD CLAYTON KIMBERLIN, Appellant

No. 05-18-00018-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-80175-2016.
Opinion delivered by Justice Bridges. Justices Partida-Kipness and Carlyle participating.

Based on the Court's opinion of this date, the judgments of the trial court are **MODIFIED** as follows:

> We **DELETE** "The age of the victim at the time of the offense was **FOURTEEN (14) YEARS**" and **REPLACE** with "The age of the victim at the time of the offense was **FIFTEEN (15) YEARS**."

As modified, the judgments of the trial court are **AFFIRMED**.

Judgment entered March 21, 2019.