**AFFIRMED and Opinion Filed April 14, 2020**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-00174-CR**

**JON MATTHEW WOODLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-81351-2018**

## MEMORANDUM OPINION

Before Justices Bridges, Molberg, and Carlyle
Opinion by Justice Bridges

A jury convicted appellant Jon Matthew Woodland of continuous sexual assault of a child under the age of fourteen and sentenced him to life in prison. In three issues, he argues the trial court abused its discretion by allowing evidence of a prior federal conviction and another extraneous offense because their probative value was substantially outweighed by unfair prejudice. He further alleges he received ineffective assistance of counsel. We affirm.

**Background**

Appellant and Mother married in July 18, 2011. Mother had one daughter, Complainant, by a prior marriage. Complainant thought of appellant as a father. Appellant and Mother admitted the marriage had its troubles, but they continued to work on the relationship.

Mother had an extremely close relationship with her mother (Complainant's Grandmother), and Mother and Complainant spent most weekends at Grandmother's house. Appellant occupied his weekends with golf and hanging out with friends. He also began posting ads on Craigslist expressing his desire to engage in "mother-daughter" sexual fantasies.

Around the time Complainant was four or five years old, Mother noticed Complainant touching herself and sometimes engaging in other questionable behavior. While her behavior raised some concerns, Mother rationalized most of it as age-appropriate behavior based on her experience working with preschoolers. Grandmother also noticed her behavior but worried more when Complainant, who was generally a happy child, sometimes acted out in anger.

In 2016, Homeland Security special agent Heidi Browder worked undercover responding to online ads with key words such as "taboo, kinky, or family fun." When answering ads, she told the individual she had an open sexual relationship with her fourteen-year-old daughter. Sometimes people had no further interaction with her and other times, someone continued discussions with her. Her goal was to

see if the person articulated a desire to have sex with the child. If the person expressed such a desire, she would arrange a meeting and then arrest the person.

In March 2016, appellant posted he was "looking for kinky mom and daughter looking for role play and fun. Attractive 40-year-old white male in Plano. Can host or you host, even hotter. Let's discuss the possibilities." Agent Browder, using the name Allison, responded to appellant's online ad. Appellant said he was extremely interested in meeting her and her fourteen-year-old daughter, Abby. Appellant and Allison continued communicating and eventually, appellant asked to talk with Abby. Appellant then emailed with Abby for several months and expressed his desire to have sex with her. They agreed to meet in Laredo on June 12, 2016, during the time appellant knew Mother, Grandmother, and Complainant were going to Disney World.

When appellant arrived in Laredo, federal officers arrested him. He was charged with coercion and enticement of a minor. He called Mother and told her about his arrest. He pleaded guilty to the charges.

When Mother returned from Florida, she was "cautiously supportive" of appellant, but cut off communication within the month. CPS contacted the family and interviewed Complainant based on an anonymous report. She did not make an outcry at that time. Eventually, Mother filed for divorce and she, along with Complainant, moved in with Grandmother.

In September 2016, Complainant confided in Grandmother that she had a "really big secret." She told her that appellant had been touching her private parts. Complainant told Mother the following day that appellant had touched her inappropriately many times at night in different places around their house. Mother subsequently contacted Plano police. Complainant was forensically interviewed on October 11, 2016 where she again described the abuse.

Appellant was arrested and pleaded not guilty to continuous sexual assault of a child under the age of fourteen. During trial, the jury heard testimony from Agent Browder, Mother, Grandmother, Complainant, and other individuals involved in the investigation. Appellant also testified in his own defense. He admitted taking responsibility for the federal conviction and receiving fifteen years' imprisonment. He testified he pleaded guilty to the federal charges because he knew what he did was wrong, but he was fighting these charges because he was innocent. Appellant emphasized he was the only one from the beginning that had not changed his story, unlike Complainant.

The jury convicted appellant of continuous sexual assault of a child under the age of fourteen and sentenced him to life in prison.

### Admission of Prior Federal Conviction

In his first issue, appellant argues the trial court abused its discretion by allowing evidence of his felony conviction for solicitation of a minor because the probative value was substantially outweighed by unfair prejudice. The State

responds the prior federal conviction for enticement and coercion of a minor had significant probative value and was not unfairly prejudicial. Alternatively, the State argues error, if any, was harmless.

Generally, extraneous-offense evidence is not admissible to show that the charged offense is consistent with the defendant's character. TEX. R. EVID. 403(b)(1). However, article 38.37 of the Texas Code of Criminal Procedure provides an exception to the general rule in prosecutions for certain sex offenses against children, including the one charged here. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B). Under that statute, evidence of other sex crimes committed by the defendant may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id*. 38.37, § 2(b).

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). We review a trial court's ruling on the admissibility of extraneous offenses under an abuse-of-discretion standard. *Id*.; *see also Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). As long as the court's ruling is within the "zone of reasonable disagreement," it will be upheld. *De La Paz*, 279 S.W.3d at 344.

However, before such evidence is admitted, the trial court must still conduct a balancing test under rule 403. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.). Relevant evidence may be excluded under rule 403 only if its probative value is substantially outweighed by the danger of unfair prejudice. *Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd). Under rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. *Id*. The rule envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id*.

A trial court, when undertaking a rule 403 analysis, must balance what is known as the *Montgomery* factors: (1) how compellingly the evidence serves to make a fact of consequence more or less probable; (2) the potential the evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent needed to use in developing the evidence; and (4) the proponent's need for this evidence. *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991) (op. on reh'g).

Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in "he said, she said" sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant. *Hammer v. State*, 296 S.W.3d 555, 568–69 (Tex. Crim. App. 2009).

Appellant argues that while the federal conviction may have been admissible under article 38.37, it should have been excluded under rule 403. He claims the factual differences in the two offenses did not "do anything to make the facts of the current case more probable." Further, he asserts the State had ample evidence supporting the offense without his felony conviction. Because of the sensitive nature of the case, appellant argues the admission of the federal conviction was the "very definition" of unfair prejudice as its only purpose was to inflame the minds of the jurors.

We consider the *Montgomery* factors in turn. First, appellant was on trial for sexually abusing his young step-daughter, and he testified in his own defense denying the allegations thereby challenging Complainant's credibility. The court of criminal appeals has warned that excluding evidence under rule 403 in "he said, she said cases" should be done "sparingly." *See Hammer*, 296 S.W.3d at 561. Appellant's federal conviction made it less probable that Complainant was lying because the offenses had factual similarities. Appellant posted ads expressing his desire to have sex with young girls and specifically indicating he was interested in "daddy daughter play." Here, appellant was charged with continuous sexual assault of his stepdaughter. Thus, the extraneous evidence had probative value. *See, e.g., Kimberlin v. State*, No. 05-18-00018-CR, 2019 WL 1292471, at *4 (Tex. App.—Dallas Mar. 21, 2019, no pet.) (mem. op., not designated for publication) (concluding evidence that defendant asked another teenage girl to show her vagina

–7–

showed his propensity to make sexual advances toward other teenage girls he knew and was therefore probative of guilt).

Although Agent Browder's testimony was prejudicial to appellant's case, like almost all extraneous offense evidence regarding child sexual abuse, rule 403 does not require a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Here, the charged offense was more egregious than the evidence of the extraneous offense. Unlike the present case, appellant's federal conviction was not based on sexually assaulting a child. Thus, it is unlikely the prior conviction impressed the jury "in some irrational but nevertheless indelible way." *Montgomery*, 810 S.W.2d at 389.

Admissible evidence can, however, become unfairly prejudicial by its sheer volume. *Id.* Here, appellant focuses on the State calling Agent Browder as its first witness, which he argues emphasized the federal conviction even more. Her testimony made up thirty of the 210 pages of transcript for the State's case-in-chief (roughly fifteen percent); however, the entire guilt-innocence phase encompassed approximately three hundred pages. Although the development of the prior conviction took some time, we cannot conclude the length of Agent Browder's testimony, compared to the rest of the State's evidence, weighs in favor of unfair prejudice. *See, e.g., Kimberlin*, 2019 WL 1292471, at *4 (thirty-two pages of testimony in a two-volume record did not result in unfair prejudice); *Fisk v. State*,

510 S.W.3d 165, 175 (Tex. App.—San Antonio 2016) (concluding twenty-four pages of extraneous offense testimony, which amounted to eighteen percent of the total testimony, did not consume an inordinate amount of time), *rev'd on other grounds*, 574 S.W.3d 917 (Tex. Crim. App. 2019).

Finally, the jury received a limiting instruction likely remedying any danger of it considering the federal conviction for an improper purpose. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (inclusion of limiting instruction mitigated any improper influence of extraneous sexual acts and jury was presumed to follow instruction).

After considering the *Montgomery* factors, we cannot say there is a "clear disparity" between the danger of unfair prejudice posed by evidence of his federal conviction and its probative value. *See Hammer*, 296 S.W.3d at 568. Thus, the court trial did not abuse its discretion by overruling appellant's rule 403 objection. Appellant's first issue is overruled.

## Admission of Extraneous Offense

In his second issue, appellant argues the trial court abused its discretion by allowing evidence of an unrelated, salacious Craigslist ad because its probative value was substantially outweighed by unfair prejudice.

We review a trial court's ruling to admit evidence under an abuse of discretion standard. *See Apolinar*, 155 S.W.3d at 186. A trial court abuses its discretion only

when the decision lies outside the zone of reasonable disagreement. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

An accused is entitled to be tried on the accusation made in the state's pleading and should not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a contested issue in the case. *Id.*

However, as explained above, before such evidence is admitted, the trial court must still conduct a balancing test under rule 403. *See Belcher*, 474 S.W.3d at 847. A trial court, when undertaking a rule 403 analysis, must balance the *Montgomery* factors. *Montgomery*, 810 S.W.2d at 389–90 (considering (1) how compellingly the evidence serves to make a fact of consequence more or less probable; (2) the potential the evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent needed developing the evidence; and (4) the proponent's need for this evidence).

Here, the State read a Craigslist ad from April 12, 2016 that further described appellant's sexual predilections. The State offered it after appellant minimized his online interactions with Abby and argued he never did anything with a minor based on a Craigslist ad. He testified in part, "It wasn't real people. And they were showing me people that weren't actually a teenage girl. You saw the picture. The picture looks like a much older person. Maybe that's how I did it in my mind."

Appellant contends he was unduly prejudiced because after the State read the entire ad to the jury, the jury likely considered not only his guilt as to the offense at issue but also for his "purported deviant sexual proclivities." However, as explained above, when cases such as these become a "he said, she said" situation, exclusion of such evidence under rule 403 should be done so "sparingly." *See Hammer*, 296 S.W.3d at 568. Further, although appellant did not sexually assault a child he met through an online ad, he expressed his desire to engage in "daddy daughter play" with a child in the second ad, which was sufficiently similar to the charged offense to be probative of his intent to commit the sexual offense against Complainant. *See, e.g., Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (extraneous offense admissible despite rule 403 objection when evidence probative of defendant's intent to commit sexual offense against one child by showing his similar intent with other children). The testimony made up less than three pages of the evidence, which meant it did not take up a substantial amount of time making it unfairly prejudicial by its sheer volume. *See Kimberlin*, 2019 WL 1292471, at *4; *Fisk*, 510 S.W.3d at 175. Finally, the court mitigated any risk the jury used it for any improper purpose by submitting a limiting instruction. *See Gaytan*, 331 S.W.3d at 228.

After considering the *Montgomery* factors, we cannot say the trial court abused its discretion by overruling appellant's rule 403 objection. Appellant's second issue is overruled.

–11–

**Ineffective Assistance of Counsel**

In his final issue, appellant asserts defense counsel was ineffective by failing to preserve error when the trial court excluded his mother's testimony. The State responds counsel acted reasonably by choosing not to object and make a record of her excluded testimony.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* two-step analysis, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687–88, 694; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Appellate review of counsel's representation is highly deferential, and we must "indulge in a strong presumption that counsel's conduct was not deficient." *Nava*, 415 S.W.3d at 307–08. To overcome this presumption, claims of ineffective assistance of counsel must be firmly founded in the record and affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740

(Tex. Crim. App. 2005). However, a reviewing court will rarely be in a position to fairly evaluate the merits of an ineffective assistance of counsel claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind the trial counsel's actions. *Id*. Rather, trial counsel should have the opportunity to explain his actions before being condemned as ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Therefore, when the record is silent as to trial counsel's strategy, we assume counsel had a sound strategy, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

To show ineffective assistance of counsel for failing to object during trial, an appellant must show that the trial judge would have committed error in overruling the objection appellant says counsel should have asserted. *Mays v. State*, No. 14-18-00702-CR, 2019 WL 5704292, at *3 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, pet. ref'd) (mem. op., not designated for publication).

Here, it is undisputed the trial court invoked "the Rule," meaning witnesses were excluded from the courtroom during trial. *See* TEX. R. EVID. 614. The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses. *See Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Once it is invoked, a witness

–13–

should not be allowed to hear any testimony in the case or talk to any other person about the case without the court's permission. *See White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.). While the trial court is obligated to exclude witnesses from the courtroom during other witnesses' testimony, the court's decision to allow testimony from a witness who has violated the Rule is discretionary. *See Bell*, 938 S.W.2d at 50.

When determining whether a trial court abused its discretion by excluding a witness, a reviewing court will determine: (1) if the Rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. In applying the test to the facts of this case, we are guided by balancing the benefit of upholding the ruling against the detriment or cost to appellant arising from that ruling, with particular concern as to the circumstances surrounding the trial court's decision to disqualify the witness. *Webb*, 766 S.W.2d at 245.

At the conclusion of the State's evidence, the State brought to the trial court's attention a jail house call between appellant and his mother, which indicated someone named Angie had been sitting in the courtroom and funneling information

–14–

to appellant's mother, a potential defense witness. The State asked the trial court to exclude his mother as a witness.

In an earlier phone call between appellant and his mother, they discussed the Rule and his mother explained that defense counsel told her she had to wait outside while other witnesses testified. The call indicated her understanding of the Rule.

Defense counsel said appellant admitted to a separate phone conversation in which his mother said, "Angie was saying something about she was talking about the house." After the trial court listened to the tape-recorded conversation, the following exchange occurred:

> [Defense Counsel]: Your Honor, in response, all we heard is that—we don't know what about the house was discussed. I mean . . .
>
> The Court: Well, isn't it true, though, that the—when the Rule is invoked it means they're not supposed to hear any testimony. Your argument goes to relevance, I guess, but even if it's irrelevant, the Rule has been violated.
>
> [Defense Counsel]: True, Your Honor.
>
> The Court: And the Rule has been violated, then she's not going to testify.
>
> [Defense Counsel]: Thank you, Your Honor.

Our record is silent regarding why appellant's trial counsel failed to object to the court excluding the mother's testimony. Appellant filed a motion for new trial but did not assert an ineffective assistance of counsel complaint. Thus, counsel has not been afforded an opportunity to explain the reasoning behind his decision not to object. It is reasonable, however, that defense counsel could have concluded the

–15–

trial court acted within its discretion by excluding the testimony, and therefore, there was no error to preserve.  *See, e.g., Jimenez v. State*, 307 S.W.3d 325, 335 (Tex. App.—San Antonio 2009, pet. ref'd) (concluding no abuse of discretion by excluding defense witness when witness "clearly violated the trial court's order pertaining to the Rule by speaking with defendant about the trial, and the violation appear[ed] to have been perpetrated knowingly").  Without being in the courtroom, appellant's mother could have learned of the information only through someone in the courtroom (Angie) telling her.  An attorney should not be deemed ineffective for failing to object to a meritless claim.  *See Dingler v. State*, No. 05-03-01552-CR, 2005 WL 1039969, at *7 (Tex. App.—Dallas May 5, 2005, no pet.) (not designated for publication); *Hubbard v. State*, 770 S.W.2d 31, 44 (Tex. App.—Dallas 1989, pet. ref'd).  Accordingly, appellant's ineffective assistance of counsel claim fails.  His third issue is overruled.

## Conclusion

The judgment of the trial court is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
190174F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JON MATTHEW WOODLAND,
Appellant

No. 05-19-00174-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-81351-
2018.
Opinion delivered by Justice Bridges.
Justices Molberg and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered April 14, 2020